UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | NO. 2:09-CR-45 |
| | ) | |
| SUNNAH MADDOX | ) | |

## REPORT AND RECOMMENDATION

Defendant has filed a Motion to Suppress [Doc. 253], seeking suppression of all evidence seized pursuant to warrants authorizing the search of two residential properties of defendant in Johnson City, Tennessee. The Motion has been referred to the United States Magistrate Judge under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation.

The search warrants were both issued on May 7, 2009, by Tennessee Circuit Court Judge Thomas J. Wright.[1] Identical affidavits were proffered in support of the warrants. One search warrant was for "The premises of the residence of Sunnah Maddox, located in Washington County, Tennessee, at 2201 Forest Acres Drive, Johnson City, Tennessee 37604." [Doc. 127-3]. The other was for "The premises of the residence located in Washington County, Tennessee at 1419 Colony Park Drive, Apt 17, Johnson City Tennessee 37604." [Doc. 129-3]. The affidavits offered in support of the warrants were executed by Brian E. Vicchio, a Task Force Agent with the Drug Enforcement Agency. [Docs. 127-2 and 129-2].

---

[1] Another motion to suppress was filed by the defendant asserting that the search warrants at issue were "unlawfully issued" [Doc. 254]. That motion is the subject of a separate report and recommendation.

Defendant first asserts that the affidavit "did not provide the Magistrate with the requisite amount of specific information that, at the time of the issuance of the search warrant, there was reasonable cause to believe that illegal activity was being conducted at that particular place." [Doc. 253, pg. 6]. Instead, according to defendant, "the affidavit contains only conclusory statements, implication, innuendo, speculation, and the agent's own beliefs." *Id.* At best, defendant maintains that any specific evidence of alleged wrongdoing at either of these places is based upon stale information from unreliable sources. Defendant asserts that the statements in the affidavit show such a reckless disregard for the truth that the good faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 894 (1984), should not apply in this case.

As a starting point for his position, defendant argues that Paragraph 17 of the affidavit states that "everything thereafter is 'what I believe...,'" which defendant maintains "negates everything thereafter" in the affidavit. Paragraph 17 actually says "[t]he following information provided in this Background of Investigation section contains *what I believe to be pertinent information* to the search of the ... residences...described above." (Emphasis added). In other words, the information in the affidavit contained in the paragraphs following Paragraph 17 is not merely the personal belief of the agent, but that factual information is what he believes supports a finding of probable cause to search the properties connected to the defendant. Defendant's assessment of the meaning of that paragraph is misleading and inaccurate.

Defendant attempts to attack the affidavit by dissecting particular paragraphs. The affidavit in this case is quite detailed, and contains many paragraphs which, while innocuous

in themselves, set the stage for an ultimate finding of probable cause. For an affidavit to accomplish its intended function of establishing probable cause, it must be shown that "there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985), quoting *United States v. Gates* 426 U.S. 213, 238 (1983). In the case of drug dealers, if the affidavit shows that it is reasonable to conclude that a suspect is "engaged in ongoing drug trafficking, it [is] reasonable to conclude that evidence of illegal activity would be found at [the suspect's] residence." *United States v. Gunter*, 551 F.2d 472, 481 (6th Cir. 2009).

Paragraph 31 establishes that Agent Vicchio and other officers began surveillance of defendant's residence at 2201 Forest Acres Drive, Johnson City, Tennessee, in December of 2008, after the defendant returned to the area from an extended stay in New York. Officer Vicchio observed the defendant driving to and from that property on numerous occasions. In Paragraph 34, Agent Vicchio stated that he saw a Toyota Highlander which defendant had been observed driving in the past leave the property, occupied by defendant and co-defendant Jamie Rush. That vehicle was followed by a Plymouth Voyager Van driven by co-defendant Latori Fitzgerald. The Tennessee Highway Patrol stopped the vehicles on Interstate 26. A canine alerted on the Voyager Van and $31,500 was located and seized.

Paragraph 39(a) states that on April 24, 2009, defendant received an intercepted telephone call from co-defendant Lee Carr. The gist of the conversation, as translated by Agent Vicchio from almost incomprehensible verbiage, was that Carr was at the defendant's house and that the defendant instructed him to put a sum of currency, possibly $50,000, next

to another $50,000 in currency in a cabinet in the house. Defendant also, in the same "code," told Carr he had some marijuana.

In Paragraph 39(b), Agent Vicchio states that on April 29, 2009, defendant made an intercepted phone call to co-defendant Jamie Rush. As translated by Agent Vicchio, Maddox told Rush that Maddox had located an apartment to rent so that they would not have to conduct drug transactions out of their home any more and could move their stash to the apartment where other coconspirators could transact the drug business for defendant and Rush.

As apparent from reading the words used by defendant, Carr and Rush in these conversations, highly specialized knowledge is necessary to understand their meaning. Earlier in the affidavit, in Paragraph 2, Agent Vicchio recounts his experience and training in narcotics investigation, including becoming familiar with terminology and slang used in the drug business in East Tennessee. Drug dealers speak in "code" on the assumption that their communications may be intercepted. The affidavit established the Agent Vicchio was well versed in this language, and it was not inappropriate for Judge Wright to rely upon his translation of the terminology used.

In Paragraph 40, of the affidavit, Agent Vicchio states that on may 7, 2009, he interviewed the landlord of 1416 Colony Park Drive in Johnson City, the second premises affiliated with the defendant for which a warrant was sought. The landlord, Mr. John Webb, advised Agent Vicchio that defendant, using the alias of "Mike Taylor," had rented the apartment from Webb on May 3, 2009.

Neither Paragraph 39 or 40 are mentioned in the defendant's argument.

In the opinion of the Court, these paragraphs, together with Paragraphs 31 and 34, show:

(1)     Defendant resided at 2201 Forest Acres Drive in Johnson City, Tennessee, after returning from New York in November, 2008.

(2)     On January 6, 2009, defendant and other alleged co-conspirators left the residence in a convoy. When the vehicles were stopped, a drug dog alerted on the vehicle operated by Latori Fitzgerald and $31,500 in cash was found therein.

(3)     On April 24, 2009, defendant instructed Carr where to leave a large quantity of cash in defendant's home, next to another large quantity of cash.

(4)     On April 29th, defendant advised Rush that he had located an apartment from which to conduct their drug business.

(5)     On May 7, 2009, Agent Vicchio learned from the landlord that defendant had rented the apartment at 1416 Colony Park Drive on May 3rd, under an assumed name.

The warrants were issued and the searches took place on May 7, 2009.

Besides these specific paragraphs, there is detailed information throughout the affidavit regarding the defendant's ongoing drug activities in both New York and East Tennessee provided to Agent Vicchio from New York officers as obtained from a confidential informant in New York, as well as from lawfully authorized wiretaps intercepted by Agent Vicchio. The information supporting probable cause is reliable and was certainly not stale.

Even if the detailed allegations of the warrant do not provide requisite probable cause, the Court is of the opinion that the search would certainly fall within the good-faith exception

set forth in *Leon, supra.*

Defendant's second argument is that he is entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), asserting that the information provided in the affidavit is "misleading" and contains "omissions of essential facts," which renders the warrants void. In order to be entitled to a "*Franks'* hearing," a defendant must make "a substantial preliminary showing that a specified portion of the affiant's averment are deliberately or recklessly false and [that] a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." *United States v. Cummins*, 912 F.2d 98, 101 (6th Cir. 1990). The defendant has made no such showing, and the paragraphs mentioned above which were ignored by the defendant in his brief show an abundance of probable cause in and of themselves.

It is respectfully recommended that the Motion to Suppress [Doc. 253] be DENIED.[2]

Respectfully recommended:

   s/ Dennis H. Inman
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).