IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:09-CR-045 |
| | ) | |
| SUNNAH MADDOX | ) | |

## **MEMORANDUM AND ORDER**

This criminal case is before the court on the June 23, 2010 report and recommendation of Chief United States Magistrate Judge Dennis H. Inman [doc. 328]. Magistrate Judge Inman recommends that the defendant's "Motion to Suppress Evidence Obtained via Electronic/Wire Interception" [doc. 257] be denied. Also before the court is Magistrate Judge Inman's June 22, 2010 report and recommendation [doc. 323] recommending that the defendant's "Motion to Suppress the Fruits of Unconstitutional Searches" [doc. 253] be denied. The defendant has objected [docs. 374, 376] to each report and recommendation, and no transcript of the hearing on the motions has been filed.

As required by 28 U.S.C. § 636(b), the undersigned has undertaken a *de novo* review of those portions of the reports and recommendations to which the defendant objects. For the reasons that follow, the objections will be overruled.

I.

*Background*

In June 2008, United States District Judge Ronnie Greer signed an order authorizing the interception of wire and electronic communications over the defendant's

cellular telephone. Judge Greer also approved several extensions of that authorization. In April 2009, Judge Greer signed an order allowing the interception of communications over two additional cellular phones used by the defendant. In May 2009, Tennessee Circuit Court Judge Thomas Wright issued search warrants for two residences located in Johnson City, Tennessee. The wiretap and search warrant applications were supported by the affidavits of Brian Vicchio, a Task Force Agent with the Drug Enforcement Agency.

The defendant has now moved to suppress all evidence obtained via the wiretaps and residential searches, arguing that the supporting affidavits did not establish probable cause. Primarily, the defendant criticizes the affidavits as being unduly reliant on confidential informants, agent speculation, and irrelevant facts. As noted above, the magistrate judge has recommended that both motions be denied.

II.

*Analysis*

*De novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). The district court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

A. <u>Wiretaps</u>

A wiretap application must be supported by circumstances indicating "probable cause to believe that evidence of a crime will be uncovered." *United States v. Alfano*, 838 F.2d 158, 161-62 (6th Cir. 1988). The supporting evidence "must be judged on the totality of the circumstances and in a reasonable and common sense manner." *Id.* at 162. The application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]" 18 U.S.C. § 2518(1)(c). Wiretaps may not continue "for any period longer than is necessary to achieve the objective of the authorization," and should be conducted in a manner that minimizes the interception of irrelevant communications. 18 U.S.C. § 2518(5).

1. <u>Initial Application</u>

The affidavit supporting the initial wiretap application cites information obtained from two confidential informants, referred to therein as "CS-1" and "CS-2." The defendant argues that <u>no</u> alleged probable cause exists except for the statements of the confidential informants. He criticizes CS-2 as being uncorroborated and "provid[ing] absolutely no information to law enforcement officials concerning criminal activity allegedly undertaken by Defendant." The defendant deems CS-1 "of extremely dubious credibility" and criticizes the investigating agent for "giv[ing] no specifics as to what reliable information

CS-1 has previously given."[1]

The court has reviewed Agent Vicchio's affidavit and agrees with the magistrate judge's (and Judge Greer's) conclusion that probable cause existed for the wiretap authorization. Contrary to the defendant's assertion, the affidavit sets forth relevant information provided by CS-1 [doc. 133-25, ¶¶ 12-15, 25-30] and explains ways in which CS-1's reliability had been corroborated [doc. 133-25, ¶¶ 10, 26]. In addition, the affidavit states that CS-1 recently placed a recorded phone call to the defendant. Based on experience and familiarity with drug "codes," the agent translated that CS-1 ordered cocaine from the defendant during the call *and* discussed a debt owed to the defendant for a prior cocaine deal.

As for CS-2, Agent Vicchio's affidavit indicates that CS-2's information had been corroborated by other agents, confidential sources, and independent investigation. [Doc. 133-25, ¶¶ 11, 22-23, 25, 31, 38-39, 42]. Further, despite the defendant's assertion that CS-2 "provided absolutely no information to law enforcement officials concerning criminal activity allegedly undertaken by Defendant," the affidavit states that CS-2 reported a May 2008 phone call in which he overheard a conversation between the defendant and co-defendant Lee Carr. Based on his experience and his familiarity with the "Islamic Code" used by the defendant, the agent indicated that this conversation pertained to cocaine base.

---

[1] In his objections, defendant states that "*the Magistrate* correctly surmises that CS-1 is of 'extremely dubious credibility.'" [Doc. 376, p.2] (emphasis added). In fact, the "extremely dubious credibility" allegation originates in *the defendant's* motion [doc. 257, p.1] and is merely *quoted by* the magistrate judge [doc. 328, p. 3-4] in summarizing the defendant's position. The magistrate judge then went on to find that CS-1's credibility was not an issue.

The defendant's arguments pertaining to the two confidential informants are thus incorrect, but they also miss the point. Supporting evidence "must be judged on the totality of the circumstances and in a reasonable and common sense manner." *Alfano*, 838 F.2d at 161. Individual paragraphs should not be read "in isolation from the remainder of the affidavit," *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977), nor should they be subjected to "line-by-line scrutiny." *Ill. v. Gates*, 462 U.S. 213, 245 n.14 (1983). In the present case, the confidential informants, pen registry information, and the experience and investigative efforts of the agents - all viewed together in context and in their totality - establish probable cause. The magistrate judge correctly concluded, "From the totality of the circumstances, there was an abundance of probable cause contained in the affidavit filed in support of the first application for a wiretap to believe that defendant was the head of an extensive drug trafficking business."

2. Subsequent Applications

Most of the probable cause in the renewal wiretap applications and the April 2009 application consisted of information obtained through the initial wiretap. The defendant argues that the absence of probable cause for the initial authorization invalidates those that followed under a fruit of the poisonous tree analysis. This argument is not well-taken, as the undersigned agrees with Judge Greer and Magistrate Judge Inman that there was probable cause existed initially.

The defendant also argues that Agent Vicchio's translation of his coded conversations and text messages are speculative and misleading. The court disagrees. In light of his experience and his familiarity with both the "Islamic Code" and the present defendant's course of conduct, Agent Vicchio's translations were properly considered as part of the totality of the circumstances establishing probable cause.

### 3. "Fundamental Contradiction"

The defendant next objects,

> An important factor that was ignored by the Magistrate is that the agent stated, in essence, that search warrants would, in all likelihood, not be useful . . . . This is directly contradicted by the same agent when he later sought search warrants in this case . . . . This contradiction calls into question everything with the wiretap applications, and Defendant objects to the *Report and Recommendation* . . . because this fundamental contradiction by the agent was ignored therein.

The defendant's argument conflates two stages of the investigation and is not well-taken.

In the initial application, Agent Vicchio explains that the use of search warrants would at that time hinder investigation into the identities of coconspirators, the locations of the defendant's alleged "stash houses," and sources of supply. The agent was thus explaining, as required by 18 U.S.C. § 2518(1)(c), why other types of investigative efforts appeared unlikely to succeed if tried at that time. *Later in the investigation*, based largely on information obtained from the wiretaps, search warrants were pursued. This is not a "fundamental contradiction," and no further discussion of this issue is warranted.

6

### 4. Section 2518(1)(c)

Next, the defendant objects that the initial affidavit did not contain the "full and complete statement" required by § 2518(1)(c) explaining why other investigative techniques were currently unlikely to succeed. In fact, the defendant accuses the agent of "only regurgitat[ing] the language of the statute without providing any real specifics as to 'other investigative techniques' that were attempted." The defendant is incorrect.

At paragraphs 52 through 66, the agent explains at length the limitations of using seven other specified techniques at that stage of the investigation. The government is simply required to have given serious consideration to other methods prior to applying for wiretap authority, and the court must have been informed of the reasons why the investigators concluded those methods were inadequate. *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985). In paragraphs 52 through 66, the government met that burden in this case.

### 5. Minimization and Length of Interception

The initial wiretap continued for almost five months. The second wiretap lasted more than two weeks. Over 29,000 communications were intercepted. With no developed argumentation, the defendant objects that the wiretaps lasted longer than necessary and that the agents did not minimize the interceptions, in violation of 18 U.S.C. § 2518(5).

The undersigned agrees with the magistrate judge that the defendant's bare assertions and conclusory statements on these points do not meet his burden of showing a

violation of § 2518(5). The defendant's objection will be overruled.

## B. Residential Searches

The defendant next seeks suppression of all evidence seized in the search of two residences in Johnson City, Tennessee. The search warrant applications signed by Circuit Judge Wright were supported by identical affidavits of Agent Vicchio. By his motion to suppress, the defendant argues that the affidavits did not establish probable cause for the issuance of either warrant. As with his wiretap objections, the defendant again engages in the sort of "hypertechnical . . . line-by-line scrutiny" criticized by the *Gates* Court. Specifically, the defendant objects that the magistrate judge blindly accepted or "completely ignored" the following alleged deficiencies:

> 1. Paragraphs 1 through 5 of the affidavits set out no substantive allegations as to the defendant or the residences, but instead merely discuss the agent's experience.
>
> 2. Paragraph 6 talks only of what is "believed" about the defendant.
>
> 3. Paragraphs 7 through 9, 11 through 13, 15, 16, and 37 "contain no allegations whatsoever concerning Defendant and are not supportive, in any way, of a finding of probable cause."
>
> 4. Paragraph 10 "contains no information whatsoever about Defendant."
>
> 5. Paragraphs 14 and 30 describe information obtained from a confidential informant. According to the defendant, the "CI provided absolutely no information to law enforcement officials concerning criminal activity allegedly undertaken by Defendant," and the affidavit insufficiently corroborates the CI's reliability.
>
> 6. Paragraphs 17 and 41 "declare that the affidavit is merely what 'I believe,'" thereby "negat[ing] the efficacy" of the entire affidavit.

7. Paragraphs 18 to 28, 35, and 39(a)-(c) contain only the agent's "speculation and belief" regarding translated wiretap conversations.

8. Paragraph 29 and 40 contain "no allegations of any sort of criminal activity, only allegations connecting Defendant to one of the above-described residences."

9. Paragraphs 31 through 34 "contain absolutely no description of any drug description occurring at the above-described residences, but only that Defendant was seen there."

10. Paragraphs 36 and 38 refer to a text-messaged photograph that "was illegally obtained pursuant to a wiretap performed without any court's authorization."

Through several of these "line-by-line" objections, the defendant again misstates the record. Most egregious is the accusation that paragraphs 36 and 38 refer to a photograph obtained by illegal wiretap. Actual review of the affidavit shows that the defendant himself sent the photo to the CI as a text message attachment, which the CI then forwarded to law enforcement agents.[2]

Similarly inaccurate is the defendant's contention that paragraphs 17 and 41 of the affidavit "declare that the affidavit is merely what 'I believe,'" thereby "negat[ing] the efficacy" of the entire document. In material part, paragraph 17 actually states, "The following information . . . contains what I believe to be pertinent information to the search . . . ." Paragraph 41, in material part, states, "Based upon the foregoing, I believe that

---

[2] It is in fact paragraphs 35 and 36 that mention the photo, not paragraphs 36 and 38. For reasons unknown to the court, the photograph was not attached to the affidavit as indicated but has since been provided to the defendant. This discrepancy does not impact the court's analysis of the defendant's "illegal wiretap" theory.

Sunnah MADDOX . . . and others known and unknown have been engaged in large scale cocaine and cocaine base (crack) drug trafficking over an extended period of time and evidence of their prior drug trafficking activity . . . is currently upon the premises of the residences" to be searched. The challenged paragraphs thus refer to information, not beliefs. The magistrate judge correctly termed the defendant's argument to the contrary "misleading and inaccurate."

Moreover, the defendant's ultimate theory again misses the point. The notion that every paragraph of an affidavit must individually establish probable cause is simply not the law. Again, supporting affidavits "must be judged on the totality of the circumstances and in a reasonable and common sense manner." *Alfano*, 838 F.2d at 161. Affidavits should not be subjected to "line-by-line scrutiny" nor should they be interpreted "in a hypertechnical, rather than a commonsense, manner." *Gates*, 462 U.S. at 236, 245 n.14. Individual paragraphs should not be read "in isolation from the remainder of the affidavit." *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977).

Viewing the affidavit in its totality, the paragraphs critiqued by the defendant combined with information contained elsewhere therein establish probable cause. The challenged paragraphs set forth background information regarding Agent Vicchio's experience, the nature of the investigation, the confidential informant, and the connections between the residences and the subjects under investigation. Under *Gates*, these facts paired with detailed information found elsewhere in the affidavit concerning the defendant's

ongoing alleged drug trafficking abundantly established probable cause for the requested searches. An affidavit establishes probable cause if the circumstances set forth therein indicate "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. If it is reasonable to conclude that a suspect is engaged in ongoing drug trafficking, it is then "reasonable to infer that evidence of illegal activity would be found at [his] residence." *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009).

III.

*Conclusion*

For the reasons provided herein, the court **ADOPTS** the findings of fact and conclusions of law set out in Magistrate Judge Inman's reports and recommendations [docs. 323, 328]. It is **ORDERED** that the defendant's motions to suppress [docs. 253, 257] are **DENIED**, and the defendant's objections thereto [docs. 374, 376] are **OVERRULED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge